**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000905
31-OCT-2018
09:59 AM**

NO. CAAP-15-0000905

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

AARON DAVID PERSIN, Plaintiff-Appellee,
v.
STATE OF HAWAI'I, STATE OF HAWAI'I DEPARTMENT OF PUBLIC SAFETY,
OAHU COMMUNITY CORRECTIONAL CENTER, SISAR PADERES, M.D.,
Defendants-Appellees,
and
ALTRES STAFFING, INC., dba ALTRES MEDICAL,
Defendant-Appellant,
and
DOE NURSES 1-10, DOE DOCTORS 1-10,
DOE HEALTH CARE PROVIDERS 1-10, and DOE ENTITIES 2-10,
Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-1571-05)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Chan, JJ.)

In this appeal arising out of a medical malpractice
action, Defendant-Appellant Altres Staffing Inc., dba Altres
Medical (Altres) appeals from the "Order Granting the Petition
for Determination of Good Faith Settlement Filed by Defendants
State of Hawaii and Sisar Paderes, M.D. on September 22, 2015,"
(Order Granting Good Faith Settlement) filed on November 17, 2015
in the Circuit Court of the First Circuit (circuit court).[1]

This case involves a medical negligence claim filed by
Plaintiff-Appellee, Aaron David Persin (Persin) against

---

[1]    The Honorable Karl K. Sakamoto presiding.

Defendant-Appellees State of Hawaiʻi (State), State of Hawaiʻi Department of Public Safety (DPS), Oahu Community Correctional Center (OCCC), Sisar Paderes, M.D. (Dr. Paderes), and Altres stemming from the medical treatment Persin received while incarcerated at OCCC from September 30, 2011 to October 5, 2011. Persin alleges that as a result of his care and treatment at OCCC, he underwent extremity amputations of both of his feet and all of his fingers and suffered permanent kidney damage.

On May 29, 2013, Persin filed a complaint alleging medical and nursing negligence in the circuit court, initially only against the State, DPS, OCCC and Dr. Paderes. It was only discovered during the deposition phase that, of the five nurses allegedly involved in the case, two of the nurses were employed by Altres at the time of the alleged incident. Persin subsequently filed a First Amended Complaint naming Altres as a defendant on May 28, 2015.

From July 2, 2015 to September 4, 2015 all parties were involved in formal mediation. Although Altres participated in the mediation meetings, it did not make any offers of settlement. However, Persin, the State and Dr. Paderes came to a settlement agreement which involved a payment of $7.2 million to Persin.

On September 22, 2015, the State and Dr. Paderes filed a Petition for Determination of Good Faith Settlement (Petition). The circuit court entered its Order Granting Good Faith Settlement on November 17, 2015. Thereafter, Altres filed its Notice of Appeal on November 25, 2015.

On appeal, Altres contends that the circuit court erred because: (1) the circuit court's interpretation of Troyer[2] weighed in favor of Altres in precluding a determination of a good faith settlement; (2) there was a failure to comply with the requirements pursuant to Hawaii Revised Statutes (HRS) § 663-15.5(b); and (3) the circuit court granted the Petition prior to final approval of funding by the State of Hawaiʻi Legislature.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to

---

[2]     Troyer v. Adams 102 Hawaiʻi 399, 427, 77 P.3d 83, 111 (2003)

the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Altres's points of error as follows, and affirm.

Persin was admitted into OCCC on September 30, 2011. During the first few days of his incarceration, Persin's interactions with the OCCC medical personnel consisted of providing his medical history, requesting pain relieving medication for back pain, requesting medication for his gout flare-up, and checking his blood pressure. On the morning of October 4, 2011, Persin was transferred to OCCC infirmary and reported being sick with headaches, a sore stomach, chills and sweats, and body aches.[3] That afternoon, Persin again went to the OCCC infirmary, reporting blurry vision and feeling dizzy.[4] Later that night, the nurse noted in Persin's medical chart that his temperature was 101 degrees and he was experiencing chills. For each of these visits to the infirmary, Persin was given Tylenol and/or Advil, encouraged to increase his fluid intake and returned to his cell.

Early the next morning, on October 5, 2011, Persin's blood was drawn for lab work ordered by Dr. Paderes.[5] During the blood draw, Persin mentioned a wound on his left forearm that started as an abrasion possibly sustained during his arrest. The nurse noted in the medical records that the wound was red and warm in the surrounding tissue and had what appeared to be purulent material in the abrasion. Persin was seen by Dr. Paderes that same morning and discharged from the infirmary. Later that afternoon, after being unable to stand for the prisoner headcount, Persin was sent to the infirmary. Persin was dizzy, had a sore throat and blurry vision, and had vomited five times. Dr. Paderes was then advised of Persin's blood work showing abnormal results. Thereafter, Dr. Paderes ordered Persin

---

[3] Persin's temperature was 103.3 degrees, blood pressure was 137/81, and pulse was 120.

[4] Persin's temperature was 102.9 degrees, blood pressure was 100/74 and pulse was 120.

[5] Persin's temperature was 101 to 102 degrees, and his blood pressure was 100/61.

to be transported to the emergency department. Persin was transported by DPS vehicle to Queen's Medical Center in the early evening of October 5, 2011. At the hospital, Persin was diagnosed with severe sepsis and kidney failure.

"[T]he determination of whether a settlement is in good faith [is left] to the sound discretion of the trial court in light of the totality of the circumstances surrounding the settlement." Troyer v. Adams, 102 Hawai'i 399, 427, 77 P.3d 83, 111 (2003). Therefore, we review the trial court's good faith determination for abuse of discretion. Id., at 434, 77 P.3d at 118.

In Troyer, the Hawai'i Supreme Court adopted the "totality of circumstances" approach for trial courts to determine if settlements involving joint tortfeasors or co-obligors are made in good faith. Id., at 425, 77 P.3d at 109. The supreme court held that,

> the trial court may consider the following factors to the extent that they are known at the time of settlement: (1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose. The foregoing list is not exclusive, and the court may consider any other factor that is relevant to whether a settlement has been given in good faith.

Id., at 427, 77 P.3d at 111.

Altres contends that the circuit court abused its discretion when it granted the State's and Dr. Paderes's Petition when the Troyer factors weighed heavily in Altres's favor. We disagree.

This is a complex medical malpractice claim involving expert witnesses from all sides. The case involves several alleged joint tortfeasors and the apportionment of any award to the individual joint tortfeasors would be based on the expert witnesses and evidence. It was asserted by Altres at the hearing

4

on the Petition on October 30, 2015, and is agreed to by Persin in his brief on appeal, that the approximate valuation of the case is $25 million to $30 million. However, the State asserts that the $25-$30 million total damage estimate by Persins and Altres is inflated, because the State defendants' experts opine that Persin had pre-existing chronic kidney disease that caused part of the alleged damages.

Further, the State contends and the evidence suggests that Persin's damages will be reduced by his own degree of fault. Prior to his incarceration, Persin was homeless, living in a truck, and admits that he was an alcoholic. On the day of his arrest, Persin physically resisted police, which likely caused the open wound on his forearm. The wound on his forearm was most likely the source of Persin's sepsis. Persin did not mention to OCCC medical staff any wound sustained during his arrest until several days after his admission to OCCC, on the morning of the day he was transferred to Queen's Medical Center. In light of evidence arguably demonstrating negligence on Persin's part contributing to the delay in Persin's treatment, as well as the other circumstances in this case, the settlement amount of $7.2 million is reasonable.

The settlement between Persin and the State and Dr. Paderes is $7.2 million. The State and Dr. Paderes's insurance policy limit is $10 million. Of the $7.2 million settlement amount, $4 million is to be paid by the State as the self insured retention under the policy and $3.2 million is to be paid by the State's insurance company. The settlement's purpose is to limit potential liability and uncertainties of a trial that faced both the plaintiff and these defendants.

Determination of a good faith settlement pursuant to HRS § 663-15.5 is intended "to provide the court with an opportunity to prevent collusive settlements aimed at injuring the interests of a non-settling joint tortfeasor." Troyer, 102 Hawai'i at 426, 77 P.3d at 110. We conclude that the circuit court did not err in granting the Petition and determining that the settlement was not aimed at injuring Altres or motivated by any other wrongful purpose. Furthermore, Altres did not provide

any evidence indicating collusion, fraud, or other tortious or wrongful conduct on the part of the settling parties.[6]

Altres further contends that the circuit court erred because the Petition was not in compliance with HRS § 663-15.5. Altres argues that the Petition failed to set forth all of the settlement terms and provided an incomplete set of terms that were impermissibly redacted.

HRS § 663-15.5(b) provides that a petition for determination of good faith settlement "shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount."

In this case, the State adequately provided the basis, terms, and settlement amount in its Petition, declarations and exhibits, and memorandum in reply to Altres's objection to the Petition. Additionally, the State provided a copy of an email from the mediator outlining the basic terms of the settlement agreement. As such, the circuit court did not abuse its discretion when it determined that the State and Dr. Paderes met the requirements set forth in HRS § 663-15.5(b) and granted the Petition.

Finally, Altres's contention that the circuit court erred by granting the Petition when the settling parties had not yet executed a final settlement agreement is without merit. Payments of settlements or judgments against the State are required to be appropriated by the Legislature because the Legislature must approve the funding from the State budget. See Hawaiʻi State Constitution Article VII § 5 ("No public money shall be expended except pursuant to appropriations made by law."); HRS § 662-11. As such, the State must obtain legislative approval before executing a final settlement agreement in this

---

[6] Altres argues that the State's attorney's unethical conduct and Persin's counsel's questionable conduct towards the two nurses that were discovered to be Altres employees during depositions supports a finding that the settlement was not made in good faith. However, from our review of the record, we determine that the circumstances, including the depositions, surrounding the discovery that the two nurses were employed by Altres does not in this case undermine the validity of the settlement agreement reached by Persin, the State and Dr. Paderes or the circuit court's good faith determination pursuant to HRS § 663-15.5.

case. Therefore, under the circumstances of this case relating to the approval of a good faith settlement entered into on behalf of the State, the circuit court did not err in granting the Petition nor is it contrary to HRS § 663-15.5 to make a determination of a good faith settlement when a final settlement agreement had not yet been executed.

Based on the information provided to the circuit court, the circuit court did not abuse its discretion in determining that Persin, the State and Dr. Paderes had entered into a good faith settlement agreement.

For the foregoing reasons, the "Order Granting the Petition for Determination of Good Faith Settlement Filed by Defendants State of Hawai'i and Sisar Paderes, M.D. on September 22, 2015," filed November 17, 2015 in the Circuit Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawai'i, October 31, 2018.


On the briefs:

Richard Turbin
Rai Saint Chu
Janice D. Heidt
(Turbin Chu Heidt, A Law
Corporation)
and James S. Bostwick
(Bostwick & Peterson, LLP)
for Plaintiff-Appellee.

Caron M. Inagaki
Mark M. Nomura
and Dennis K. Ferm
Deputy Attorneys General
for Defendants-Appellees.

Kenneth S. Robbins
Catherine L. Aubuchon
and Kelly A. Higa
(Bronster Fujichaku Robbins)
for Defendant-Appellant.

Chief Judge

Associate Judge

Associate Judge

7